# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA L. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-55-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Teresa L. Williams requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 2, 1973, and was thirty-eight years old at the time of the administrative hearing (Tr. 25, 113). She earned her GED and took some classes at a vocational school, and has previously worked as front desk clerk, housekeeper, laundry worker, short order cook, and mail clerk (Tr. 19, 131). The claimant alleged that she has been unable to work since November 30, 2009, due to injuries to ankles from a motor vehicle accident in 2006; inability to walk, stand, or sit for long periods of time; bilateral carpal tunnel, with associated numbness, tingling, and loss of feeling; pain, weakness, and fatigue; mental health problems including bipolar disorder and depression; problems with right breast; and past substance abuse (Tr. 130-131).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-05, and supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 28, 2010. Her applications were denied. ALJ J. Frederick Gatzke held an administrative hearing and found that the claimant was not disabled in a written opinion dated October 28, 2012 (Tr. 10-21). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of appeal. *See* 20 C.F.R. §§ 404.1481, 416.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. §§ 404.1567(a), 416.967(a), except that she could not engage in prolonged walking, could not perform complex work instructions, could not handle fragile objects or merchandise, and could have no more than frequent use of the right dominant upper extremity for repetitive acts (Tr. 14). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform, *i. e.*, food and beverage order clerk, new account interviewer, and weight tester (Tr. 20).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinion of her treating physician Dr. Theresa Farrow, and (ii) by failing to properly assess the opinion of Physician Assistant Ruth Fereday. Because the ALJ did fail to properly analyze the opinion of Dr. Farrow, and other opinion evidence as well, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The ALJ determined that the claimant had the severe impairments of right pilon fracture of the distal tibia, status-post three repair surgeries; left talus fractures, status-post open reduction and internal fixation; bilateral carpal tunnel syndrome; obesity; major depressive disorder; and anxiety disorder. Medical evidence related to the claimant's

mental impairments reflects that the claimant was regularly treated at ABC Medical Clinic, where Ms. Fereday was employed as a Physician Assistant, and records from 2007 through 2011 reflect that the claimant was regularly assessed with, *inter alia*, depression and anxiety, and prescribed medications (Tr. 354-366). Ms. Fereday completed an RFC questionnaire regarding the claimant on December 21, 2010, in which she indicated that the claimant's diagnoses included chronic depression in addition to her physical impairments (Tr. 367). Ms. Fereday indicated that the claimant's symptoms would constantly interfere with her attention and concentration, and medication side effects included fatigue/poor concentration. She further indicated that the claimant could walk less than fifty feet without rest or significant pain, that she could sit for sixty minutes at a time for up to eight hours a day, and could stand/walk ten minutes at a time for zero hours a day, and would need a position allowing her to sit/stand at will, as well as take unscheduled breaks six to eight times a day for fifteen to twenty minutes (Tr. 367). She further limited the claimant to lifting/carrying up to ten pounds, stated the claimant had limitations in doing repetitive reaching, handling, or fingering, and that she could only grasp with her hands five to ten percent of an eight-hour workday (Tr. 368). Finally, she indicated that the claimant would be absent from work more than four times a month, and referenced the claimant's histories of chronic depression and drug abuse as other limitations that would limit the claimant's ability to work (Tr. 368).

William Cooper, CO assessed the claimant on March 25, 2011 (Tr. 331). Upon examination, the claimant appeared nervous, but was awake, alert, and oriented, and

thought processes appeared normal. Dr. Cooper assessed the claimant with a history of: chronic bilateral ankle pain; chronic left knee pain; bilateral carpal tunnel syndrome; depression versus bipolar disorder; chronic drainage from the right breast, etiology unknown; and benign mole, status post excision (Tr. 331-334). A state reviewing physician then determined that she did not have a severe mental impairment, adopted Dr. Cooper's assessment of depression versus bipolar disorder, and found she had mild limitations in each of the areas of functioning (Tr. 339-351).

The claimant began receiving mental health treatment at Carl Albert Community Mental Health Center (CACMHC) in September 2011. At that time, she was assessed with major depressive disorder, recurrent, severe with psychotic features; anxiety disorder, NOS; amphetamine dependence, early full remission; and a global assessment of functioning (GAF) score of 55 (Tr. 463). Through her treatment at CACMHC, Dr. Farrow managed the claimant's medications, and this appeared to result in a reduction of her complaints of hallucinations, from occasional to seeing some shadows but not having auditory hallucinations or delusions (Tr. 447-451). On January 25, 2012, Dr. Farrow's treatment notes reflect that the claimant was doing "pretty good, but is too sedated during the day," and that she was still depressed and anxious "but better," and that she interacted appropriately but was jittery. Dr. Farrow stated that the claimant's response to medication was partially effective (Tr. 447). On April 9, 2012, Dr. Farrow completed a mental Medical Source Statement, in which she opined that the claimant was markedly limited in the following functional categories: (i) understand and remember detailed

instructions; (ii) maintain attendance and concentration for extended periods; (iii) perform activities within a schedule, maintain regular attendance, and be punctual within ordinary tolerances; (iv) work in coordination or proximity to others without being distracted by them; (v) complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (vi) interact appropriately with the general public; and (vii) travel in unfamiliar places or use public transportation (Tr. 454-455). She also noted moderate limitations in the following categories: (i) sustain an ordinary routine without special supervision, (ii) accept instructions and respond appropriately to criticism from supervisors, (iii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (iv) respond appropriately to changes in the work setting, and (v) set realistic goals or make plans independently of others (Tr. 454-455).

The claimant contends, *inter alia*, that the ALJ failed to properly analyze the opinion provided by Dr. Farrow as to her mental limitations. Medical opinions from a treating physician such as Dr. Farrow are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing

the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300.

In this case, the ALJ assigned little weight to Dr. Farrow's opinion because it was inconsistent with the medical evidence of record and the claimant's own statements, pointing to no medical evidence but recounting that the claimant had stated in her own Function Report that she could cook small meals, do the laundry, shop, handle finances, drive, and attend church, and had not been fired due to difficulty getting along with

others (Tr. 18). In fact, she reported that she cooks as little as possible because she has difficulty standing; she does the laundry sitting down; her children sweep, mop, and do the dishes for her; she only shops monthly and quickly due to pain in her feet; she does not generally go anywhere except for church; she does not handle stress well and is on medication for it; and she does not like routine changes (Tr. 164). The ALJ then continued in his mental RFC assessment by stating that her one-time GAF score of 55 was a consistent assessment, noted she had applied for unemployment benefits and a job after the alleged onset date, and also sold methamphetamine after the alleged onset date, and that her symptoms had "somewhat improved" by April 2012 (Tr. 18).

The Court finds that most of the ALJ's reasoning for rejecting Dr. Farrow's opinion is not legally sound. First, the ALJ's opinion failed to take into account that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005). *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), *citing* 20 C.F.R. Subpt. P, app. 1 § 12.00(B). Second, the ALJ's conclusion that the opinions expressed by Dr. Farrow were inconsistent with other medical evidence in the record would have been a legitimate reason for refusing to give them controlling weight if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,*

373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Instead, the ALJ simply declined to give it controlling weight because it was not fully consistent with unspecified medical evidence of record. *See Langley,* 373 F.3d at 1119. In addition to failing to identify the inconsistent *medical* evidence, he engaged in picking and choosing of the claimant's Function Report by mischaracterizing the claimant's report of her abilities. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson*, 366 F.3d at 1083 and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). Accordingly, the ALJ provided no analysis in relation to the pertinent factors and thus improperly evaluated Dr. Farrow's opinion. This is a significant omission because Dr. Farrow indicated, *inter alia*, the claimant would be

absent from work more than four days a month due to her limitations.

Although the ALJ found the claimant had the severe impairments of depression and anxiety, he additionally erred at step four when he failed to explain how her severe anxiety and chronic depression were accounted for by a finding that she "cannot perform complex work," *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments, seemingly challenging the claimant's mental impairments based on credibility factors, *i. e.*, application for unemployment benefits, *etc*. Instead, the ALJ should have explained why the claimant's severe mental impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the ruling of the Commissioner of the Social Security Administration is REVERSED and the case REMANDED for further proceedings not inconsistent herewith.

**DATED** this 28th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**